UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD ROCHE,                          )
        Plaintiff,                     )
                                       )
            v.                         )    C.A. No. 11-12099-MLW
                                       )
STEPHEN M. SALEEN (aka STEVE           )
SALEEN and STEVE MARK SALEEN),         )
individually; MOLLY SALEEN,            )
individually; SMS RETAIL-CORONA;       )
SALEEN INCORPORATED; SALEEN RETAIL     )
SERVICES; MOLLY SALEEN, INC.;          )
SMS LIMITED, INC.; SMS SIGNATURE       )
CARS; each and/or all dba SMS          )
SUPERCARS and/or SMS RETAIL-CORONA     )
STORE,                                 )
        Defendants.                    )

MEMORANDUM AND ORDER

WOLF, D.J.                                      September 28, 2012

I. INTRODUCTION

    Plaintiff Edward Roche alleges that the defendants failed to
deliver a custom 2011 SMS 302 SC Mustang vehicle ("the Mustang")
for which the plaintiff had contracted. He brings claims for breach
of contract, breach of the covenant of good faith and fair dealing,
fraud, violation of The Massachusetts Consumer Protection Act, and
unjust enrichment. The court has subject matter jurisdiction
pursuant to 28 U.S.C. §1332(a)(1).

    The defendants are eight individuals and business entities,
each and all allegedly doing business under the names of SMS
Supercars and/or SMS Retail-Corona Store.[1] All of these individuals

_____

    [1] The defendants are: Stephen M. Saleen (aka Steve Saleen
and Steve Mark Saleen); Molly Saleen; SMS Retail-Corona; Saleen
Incorporated; Saleen Retail Services; Molly Saleen, Inc.; SMS

and entities have "Saleen" or "SMS" as part of their names. The defendants collectively have filed a single Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("the Motion"). They argue that their contacts with Massachusetts are not sufficient for the court to exercise personal jurisdiction over them in a manner that comports with the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, and due process.

For the reasons stated in this Memorandum and Order, the court concludes that the plaintiff has presented a prima facie case for the existence of personal jurisdiction over the defendants. Accordingly, the Motion is being denied without prejudice to possible future litigation of the issues of personal jurisdiction, after discovery is complete, on motions for summary judgment or at trial.

II. STANDARD OF REVIEW

As defendants agree, it is appropriate to utilize the prima facie standard of review to decide the question of personal jurisdiction in this case. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). Under this standard, the plaintiff "has the burden of making a prima

---

Limited, Inc.; and SMS Signature Cars; each and/or all doing business as SMS Supercars and/or SMS Retail-Corona Store.

facie showing of personal jurisdiction." Id. In its analysis of
whether the plaintiff has made that showing, "the district court is
not acting as a factfinder," but rather "accepts properly supported
proffers of evidence by a plaintiff as true," so long as the
plaintiff's jurisdictional assertions do not "rely on unsupported
allegations." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st
Cir. 1992) (citations omitted). The court "constru[es] disputed
facts in the light most hospitable to plaintiff." Ticketmaster-
N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). It may also
consider any facts that the defendant presents, "to the extent that
they are uncontradicted." Daynard, 290 F.3d at 51. Based on this
evidence, the court determines whether the plaintiff has presented
an adequate case for personal jurisdiction. See id.


III. FACTS

     The following facts are presented in the plaintiff's Verified
Complaint and the affidavits that he has submitted.

     Roche is a resident of Massachusetts. Compl. ¶1; Affidavit of
Edward Roche ¶1 ("Roche Aff."). The defendants are residents of,
are incorporated in, or have their principal place of business in,
California or Michigan. Compl. ¶¶2-9.

     The defendants have contracted for years with Massachusetts
Ford dealerships, and have certified dealers and distributors in
Massachusetts. Compl. ¶13; Roche Aff. ¶¶5-7. Prior to the events

                                3

that give rise to this lawsuit, the plaintiff purchased at least
two Mustangs from Massachusetts dealerships that were sent to the
defendants   for   customization   and   then   shipped   back   to
Massachusetts. Compl. ¶14. One of those cars was a 2004 "custom
Saleen label Mustang" that the plaintiff bought from Rodman Ford in
Foxboro, Massachusetts. Roche Aff. ¶5.

Roche contracted for the defendants to deliver to him in
Massachusetts the Mustang at issue in this case. Compl. ¶¶19, 22
Ex. B; Roche Aff. ¶12. Over the course of more than a year, he had
a series of interactions from Massachusetts with the defendants
regarding the contract for the Mustang. Compl. ¶¶17-34; Roche Aff.
¶¶8-24. These interactions included telephone calls, emails, faxes,
electronic communications, website visits, letters, and payments to
defendants. Compl. ¶¶15-34; Roche Aff. ¶¶11-24. The defendants
failed to deliver the Mustang in accordance with the contract, and
made fraudulent and deceptive excuses about the delayed delivery.
Compl. ¶¶22, 25, 29-36; Roche Aff. ¶¶15, 18, 22-24. The defendants
assured Roche that they were working on the Mustang, when in fact
they had sold it to someone else. Compl. ¶¶25-36, 49-61; Roche Aff.
¶¶18-24; Affidavit of Susan B. Grandis ¶¶3-10 ("Grandis Aff."). In
light of the defendants' assurances that they were working on the
Mustang, Roche continued to make payments to the defendants. Compl.
¶¶25-27; Roche Aff. ¶¶18-20; Grandis Aff. ¶¶3-10.

Roche's initial payment to the defendants for the Mustang was

4

a check made out to SMS Supercars, which was endorsed by Clint Saleen, accounting manager for Saleen, Incorporated. Compl. ¶24; Roche Aff. ¶17, Ex. E. The invoice and customer order form that the defendants sent to Roche are on SMS letterhead, and elsewhere say SMS Retail-Corona Store. Exs. B and C to Compl. In a letter from the defendants' lawyer to Roche, the defendants' lawyer stated that she represented SMS and that the plaintiff's contract for the Mustang was with SMS. Compl. ¶31, Ex. G; Roche Aff. ¶24, Ex. H. On another occasion, the defendants' lawyer wrote to the plaintiff's lawyer and stated that she represented "SMS Retail ('SMS'), which is a DBA of a properly organized California corporation." Compl. ¶33, Ex. J.

In the defendants' Motion and accompanying filings they assert that the plaintiff contracted for the Mustang solely with SMS Retail-Corona, a wholly owned subsidiary of SMS Signature Cars, and with no other defendant. Def.s' Mem. Supp. Mot. to Dismiss at 2 n.l; Affidavit of Stephen M. Saleen ¶¶3-4.


IV. DISCUSSION

A. Legal Standard

In order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum state "to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v.

5

Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). However, the court may proceed directly to the constitutional analysis because "the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) (internal quotation marks omitted).

A court's exercise of personal jurisdiction over a defendant is constitutionally permissible only if the "nonresident defendant possesses sufficient contacts with the forum state so that subjecting him, her, or it to the forum's jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) ("Pleasant St. I") (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). There are two recognized types of personal jurisdiction: general and specific.

> General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. . . . Specific personal jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.

Pleasant St. I, 960 F.2d at 1088-89.

The United States Court of Appeals for the First Circuit employs a three-part test for determining whether specific personal

6

jurisdiction over a defendant exists:

> First, the claim underlying the litigation must directly
> arise out of, or relate to, the defendant's forum-state
> activities. Second, the defendant's in-state contacts
> must represent a purposeful availment of the privilege of
> conducting activities in the forum state, thereby
> invoking the benefits and protections of that state's
> laws and making the defendant's involuntary presence
> before the state's courts foreseeable. Third, the
> exercise of jurisdiction must, in light of the Gestalt
> factors, be reasonable.

Id. at 1089. The "Gestalt factors" that the court weighs in
determining the reasonableness of exercising its jurisdiction are:

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the
> plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in
> obtaining the most effective resolution of the
> controversy, and (5) the common interests of all
> sovereigns in promoting substantive social policies.

Nowak, 94 F.3d at 717.

Because the court concludes that the plaintiff has presented
a prima facie case of specific jurisdiction over the defendants, it
is not deciding the issue of possible general jurisdiction. See
Halchak Corp., Inc. v. Symbiot Bus. Grp., Inc., 516 F. Supp. 2d
149, 153 (D. Mass. 2007).

B. Specific Jurisdiction

For purposes of the defendants' Motion, the court is treating
the defendants and their contacts with Massachusetts collectively.
In their single Motion and supporting memorandum, the defendants
often do not distinguish among themselves. Although the defendants'
filings sometimes refer to the contacts that a particular defendant

had with Massachusetts, the defendants often refer to themselves collectively as "defendants," without distinction. Similarly, the defendants have not acted as separate, independent entities in their interactions with the plaintiff. For example, while the defendants claim that the plaintiff's contract for the Mustang was only with SMS Retail-Corona, the plaintiff's initial check was made out to SMS Supercars and endorsed by Clint Saleen, accounting manager for Saleen, Incorporated. Additionally, the defendants' lawyer represented to the plaintiff that she represented SMS, which are initials in the names of three different defendants and the two entities that the defendants are doing business as.

Because the defendants have taken this approach in their submissions to the court and their interactions with the plaintiff, the court is not distinguishing among the defendants for purposes of the Motion. Where defendants hold themselves out as joint venturers, partners, or as having a principal-agent relationship – even if that relationship does not in fact exist – the Due Process Clause allows the court to attribute the contacts of one defendant to another for the purpose of determining personal jurisdiction. See Daynard, 290 F.3d at 56-57. Any issues regarding personal jurisdiction over some defendants and not others, the imputation of contacts from some defendants to others, and whether defendants' actions merit piercing the corporate veil, see My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618-20 (1968) (quoted in

8

Birbara v. Locke, 99 F.3d 1233, 1238-39 (1st Cir. 1996)), may be addressed on a motion for summary judgment or, if necessary, at trial.

As discussed below, a prima facie case establishing personal jurisdiction has been presented.

### 1. Relatedness

Collectively, the defendants correctly do not dispute that their contacts with Massachusetts relate to the plaintiff's contract for delivery of the Mustang. The court does not need to proceed further with this inquiry because personal jurisdiction "may be obviated by consent or otherwise waived." Gen. Contracting & Trading Co. v. Interpole, Inc., 940 F.2d 20, 22 (1st Cir. 1991).

### 2. Purposeful Availment

The purposeful availment requirement for personal jurisdiction functions to ensure that "jurisdiction is not premised on random isolated or fortuitous contacts with the forum state." Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 716 (1st Cir. 1996) (internal quotation marks omitted). The twin centerpieces of this analysis are voluntariness and foreseeability. Id. A defendant's contacts with the forum must be voluntary, which means that they cannot be "based on the unilateral actions of another party or a third person." Id. Additionally, a defendant's "contacts with the forum state must be such that he should reasonably anticipate being haled into court there." Id.

The defendants argue that their contacts with Massachusetts do not satisfy the standard for purposeful availment as it is applied in 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441 (1972) and Droukas v. Divers Training Acad., Inc., 375 Mass. 149 (1978). In 'Automatic' Sprinkler, the Supreme Judicial Court of Massachusetts held that personal jurisdiction did not exist over a defendant whose only contacts with Massachusetts were: the mailing of a signed purchase order into the Commonwealth; the receipt of an invoice mailed from Massachusetts; the receipt of a letter from Massachusetts accepting a purchase order; and the sending of a payment to Massachusetts. 361 Mass. at 444-46. Similarly, in Droukas, personal jurisdiction was found not to exist where the defendant's only contacts with Massachusetts were: an advertisement distributed in the Commonwealth; the receipt of a telephone call from Massachusetts regarding the purchase of goods; sending correspondence to Massachusetts confirming the sale of goods; and the shipment of goods to Massachusetts through an independent third-party carrier. 375 Mass. at 153.

In 'Automatic' Sprinkler and Droukas, the Supreme Judicial Court emphasized that the defendants' activities in relationship to Massachusetts were isolated, had only a slight effect on commerce in the Commonwealth, and did not reveal their purposeful intent to "avail [themselves] of the privilege of conducting activities in the forum State." Droukas, 375 Mass. at 154; see also 'Automatic'

10

Sprinkler, 361 Mass. at 446.

In this case, Roche has proffered evidence that the defendants intentionally and freely entered into a contract to directly deliver the Mustang to him in Massachusetts. The defendants communicated with the plaintiff about the Mustang, while he was in Massachusetts, prior to the formation of the contract and for over a year thereafter. The defendants also have had ongoing business relationships with Massachusetts car dealerships for many years, and the plaintiff has previously purchased cars from a Massachusetts dealer that the defendants had customized or bore their label.

This ongoing, voluntary business engagement with Massachusetts, which affects the Commonwealth's commerce, distinguishes the instant case from 'Automatic' Sprinkler and Droukas, and does not render it unforeseeable that the defendants would have to defend a lawsuit here. See Daynard, 290 F.3d at 61-62 (telephone and fax communications, combined with an ongoing contractual relationship with a resident of Massachusetts, can constitute purposeful availment); Hahn v. Vt. Law Sch., 698 F.2d 48, 51-52 (1st Cir. 1983) (Vermont Law School continuously drew students from Massachusetts, so mailing a single application and acceptance letter into Massachusetts was sufficient for personal jurisdiction); Halchak Corp., Inc. v. Symbiot Bus. Grp., Inc., 516 F. Supp. 2d 149, 152-53 (D. Mass. 2007) (mailing of one check to a

plaintiff in Massachusetts "constitute[s] a business transaction .
. . and is enough to confer personal jurisdiction on this Court");
Bos. Super Tools, Inc. v. RW Tech., Inc., 467 F. Supp. 558, 561-62
(D. Mass. 1979) (purposeful availment based on a distributorship
agreement with a Massachusetts entity); see also Carlson Corp. v.
Univ. of Vt., 380 Mass. 102, 109 (1980); Good Hope Indus., Inc. v.
Ryder Scott Co., 378 Mass. 1, 11-12 (1979).

   Additionally, Roche has provided evidence that the defendants
communicated false statements to him about the work they were doing
on the Mustang, which induced the plaintiff to continue to make
payments to the defendants, when they had in fact sold the Mustang
to someone else. Where a defendant communicates a false statement
to a person in the state with the intent that the statement be
detrimentally relied upon, the defendant "has thereby purposefully
avail[ed] itself of the privilege of conducting activities within
the forum State." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983
(1st Cir. 1986) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661,
664 (1st Cir. 1972)).

   The court concludes that the plaintiff's properly supported
proffers of evidence, taken as true, satisfy the standard for
purposeful availment.

### 3. The "Gestalt Factors"

   Although the court has concluded that the defendants have had
sufficient minimum contacts with Massachusetts, it still must

evaluate whether its exercise of personal jurisdiction "comports

with traditional notions of 'fair play and substantial justice.'"

Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 717 (1st Cir. 1996)

(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).

As indicated earlier, this requires weighing the "Gestalt factors,"

which are:

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the
> plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in
> obtaining the most effective resolution of the
> controversy, and (5) the common interests of all
> sovereigns in promoting substantive social policies.

Nowak, 94 F.3d at 717.

With regard to the first factor, it will impose a burden on

the defendants to have to litigate this case in Massachusetts

because they are residents of, incorporated in, or have their

principal place of business in, California or Michigan. However,

this difficulty exists for virtually all out-of-state defendants.

See Nowak, 94 F.3d at 718. In order for this factor to be

meaningful, the defendants must show that litigating in

Massachusetts would be unusually onerous. See id. Additionally,

this factor is primarily important because "it allows a court to

guard against harassing litigation." Id. The defendants have made

no showing that litigating this case in Massachusetts would be

unusually onerous or that Roche has brought this action here to

harass them. Therefore, this factor weighs in favor of exercising

13

personal jurisdiction over the defendants.

Second, Massachusetts has a significant interest in obtaining jurisdiction over defendants who intentionally breach contracts with its residents, see Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 12 (1st Cir. 2002), or "who causes tortious injury within its borders," Nowak, 94 F.3d at 718. Roche claims that the defendants intentionally breached the contract for the Mustang, and communicated fraudulent and deceptive information to him while he was in Massachusetts. Based on these allegations, and Roche's proffered evidence of the defendants' ongoing business relationships in Massachusetts, the Commonwealth has a strong interest in adjudicating the present dispute. Therefore, this factor also weighs in favor of exercising personal jurisdiction over the defendants.

Third, the court must afford deference to a plaintiff's choice of forum. See Nowak, 94 F.3d at 718. Although the plaintiff in this case likely could seek an adequate remedy in the courts of another state, such as California, litigating this case in Massachusetts is evidently more convenient for him.

The fourth factor is predominantly about the judicial system's interest in reaching "the most effective resolution of the controversy." Nowak, 94 F.3d at 718. In most cases, this factor "is a wash," id., and the court concludes that it does not materially affect the analysis in this case.

14

Fifth, the substantive social policies that are implicated in this case are largely addressed in the court's analysis of the other "Gestalt factors." Massachusetts has policy interests in "protecting its citizens from out-of-state providers of goods and services as well as affording citizens a convenient forum in which to bring their claims." Nowak, 94 F.3d at 719. To the extent that this factor is independently relevant in this case, it further tips the scales in the plaintiff's favor. Therefore, the "Gestalt factors" weigh in favor of personal jurisdiction.

In view of the foregoing, the court concludes that specific personal jurisdiction over the defendants exists in Massachusetts because they have had the requisite contacts with the state, and the exercise of jurisdiction does not offend notions of fair play and substantial justice.

V. ORDER

Accordingly, it is hereby ORDERED that:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 3) is DENIED without prejudice to possible further consideration of the issues of personal jurisdiction, imputed contacts, or piercing the corporate veil, after discovery is complete, on a motion for summary judgment or, if necessary, at trial.

2. The defendants shall answer the Verified Complaint by

October 28, 2012.

    3. The parties shall comply with the attached Notice of Scheduling Conference that will be held on November 7, 2012, at 4:00 p.m.

 

                                                    UNITED STATES DISTRICT JUDGE